LONNIE BRITTON,

        Petitioner,

      v.

GARY LANIGAN, et al.,

        Respondents.

HONORABLE NOEL L. HILLMAN

Civil Action
No. 17-3701 (NLH)

**OPINION**

**HILLMAN, District Judge:**

## I.   <u>INTRODUCTION</u>

Before the Court is Petitioner Lonnie Britton's ("Petitioner") amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 8 ("Amended Petition").) Also before the Court is Petitioner's motion for the assignment of pro bono counsel. (ECF No. 24.)

Petitioner is a state-sentenced inmate incarcerated at Northern State Prison following his conviction for robbery and terroristic threats. (ECF No. 1 at 25; ECF No. 13-10; ECF No. 19 at 1.) In an Opinion and Order entered on January 26, 2019, this Court determined that the Amended Petition was a mixed habeas petition because it presented both: (1) unexhausted claims that Petitioner never fairly presented to the highest state court; and (2) one claim that Petitioner exhausted in state court. (ECF No. 17 at 11-12; ECF No. 18.) This Court

afforded Petitioner thirty days to either: (1) file a motion to stay in order to allow him to exhaust the Unexhausted Claims; or (2) submit a letter dismissing the Amended Petition's Unexhausted Claims. (ECF No. 18 at 2-3.) On March 20, 2019, Petitioner filed a letter with this Court "dismiss[ing] all of the Amended Petition's Unexhausted Claims [in order to] proceed ... only on the Exhausted Claim[]." (ECF No. 20 at 1.)

The Court has considered the Amended Petition (ECF No. 8), the Respondents' answer (ECF No. 13), and Petitioner's reply. (ECF No. 15.) For the reasons set forth below, the Court will deny the Amended Petition on the merits, will deny a certificate of appealability, and will deny the motion for the assignment of pro bono counsel.

## II. **PROCEDURAL AND FACTUAL BACKGROUND**

With respect to the exhausted claim of the Amended Petition on which Petitioner now seeks to proceed (see ECF No. 20 at 1), Ground Three alleges, among other things, a denial of his constitutional right to self-representation.[1] During his state court proceedings on the robbery and terroristic threat criminal

---

[1] As defined in this Court's February 26, 2019 Opinion, the Amended Petition's Unexhausted Claims were the following: (a) Ground One's Summary Order Claim, Removal Claim, Counsel Withdrawal Claim, and Counsel Performance Claim; (b) Ground Two's Aguilar-IAC Claim; and (c) Ground Three's Faretta Claim, Exercise of Jurisdiction Claim, and Warrant Claim. (ECF No. 17 at 12.) The Amended Petition's Exhausted Claim is Ground Three's Self-Representation Claim. (Id. at 11.)

charges against him (see ECF No. 13-2), Petitioner filed a

motion on or about November 24, 2014 to proceed pro se. (ECF

No. 13-3 at 1-2 ("Self-Representation Motion").) In support of

that Motion, Petitioner submitted over two hundred pages of

exhibits to the state court. His submissions included Uniform

Commercial Code financing statements and the "Treaty of Peace

and Friendship between the United States and His Imperial

Majesty, the Emperor of Morocco, from 1787." (ECF No. 13-4 at

17.) (See also ECF No. 13-5 at 2 and 5 (referring to Petitioner

"wear[ing] down [the court] with hundreds of pages of documents

and torrents of oral gibberish spoken in support of those

documents").) Petitioner's pro se written submissions were

"speckled with references to the Administrative Procedure Act,

Article 3 of the Constitution, Erie v. Tompkins[2], UCC Financing

Statements, State v. Ragland[3], Bills of Attainder, Writs of

Replevin and some references to Stableman's Liens." (ECF No.

13-5 at 4.)

---

[2] In Erie v. Tompkins, 304 U.S. 64, 78 (1938), the United States
Supreme Court held that a federal court sitting in diversity
jurisdiction must apply the substantive law of the forum state.

[3] In State v. Ragland, 519 A.2d 1361, 1365 (N.J. 1986), the New
Jersey Supreme Court held that a jury instruction -- stating
that if the jury found certain facts, the jury "must" find
defendant guilty -- does not improperly coerce jury
deliberations or interfere with jury independence.

On January 23, 2015, the Honorable Kyran Connor, J.S.C. heard oral arguments on the Self-Representation Motion. (ECF No. 13-4 at 3 and 17 ("Motion Hearing").) At that Hearing, Petitioner was represented by Assistant Deputy Public Defender, Omar M. Aguilar, Esquire. (Id. at 1.) Mr. Aguilar summarized Petitioner's request made at a prior court appearance that he wanted to represent himself. Mr. Aguilar explained that counsel had therefore filed the Self-Representation Motion. (Id. at 3.) Mr. Aguilar stated that Petitioner was prepared at the Motion Hearing to answer the court's questions about his intentions regarding self-representation. (Ibid.)

Judge Connor then asked the following of Petitioner:

> THE COURT: Mr. Britton, did – is [it] still your desire ... to represent yourself in this case?
>
> PETITIONER: Yes, to advocate for myself and to exercise a Constitutional right to be heard and spoke [sic].
>
> THE COURT: Without counsel's assistance.
>
> PETITIONER: I never gave implied consent to counsel assistance and before – by time or before my appearance here the previous judge is the one that gave the order for Mr. Aguilar to speak on behalf of me, and actually, I had filed motions from the institution where I'm being held at in my private capacity at which for some reason, due to what goes on as far as getting mail out and things sent to the courts, there was a restriction or a clerical mistake because nothing was heard.

(ECF No. 13-4 at 4-5.) Petitioner stated that he had never previously represented himself in any other case. (Id. at 6.)

Petitioner consistently referred to himself in the third person during the Motion Hearing. He stated that he did so because of the "role of dual capacity" of self-representation. (Id. at 7) ("[T]hose [first degree robbery charges] are the charges that the defendant, I was indicated for, the defendant was indicted for, charges"). The court questioned him about his understanding of the charges against him and his sentence exposure. (Id. at 8-9.) Petitioner stated that the maximum sentence for the charged offenses would be twenty years and that, pursuant to the No Early Release Act, he would not be "capable of being released un[til] finish[ing] 85 percent of the time." (Ibid.)

At the Motion Hearing, Judge Connor also asked Petitioner whether he understood that, if he acted as his own attorney, he was obligated to follow and comply with the New Jersey Rules of Evidence. (Id. at 10-11.) Petitioner responded affirmatively, but said that he was not familiar with the New Jersey Rules of Criminal Procedure. (Id. at 10-12.) Judge Connor also asked Petitioner if he understood that "there are restrictions on the way that questions can be asked of witnesses on the witness stand." (Id. at 13.) Petitioner replied: "I'm aware of that,

but I'm also aware of <u>State v. Ragland</u> and the conscience – the
jury being a conscience of the community[.]"  (<u>Ibid</u>.)

Judge Connor asked Petitioner whether he understood that it
would "be to [his] advantage to have the help of an attorney in
defending against this case."  (<u>Id</u>. at 14.)  Petitioner
responded that he was concerned about representation by an
attorney because he had experienced problems with counsel in the
past.  Specifically, Petitioner stated that he had "not be[en]
able to get through with attorneys and [had] issues with them
responding to letters or filing the right motions or having to
go through the stress of dealing with the circumstances."  (<u>Id</u>.
at 14-15.)  (<u>See also</u> ECF No. 13-5 at 4 (Petitioner "spoke of
his concern for the multiplicity of motions that he has filed
already ... [It] [is] clear to [the court] that those
essentially nonsensical filings are what he sees as the real
issues that need to be addressed in this case").)

At the conclusion of the Motion Hearing, Judge Connor
reserved decision until the next court session.  (<u>Id</u>. at 18.)
On February 13, 2015, Judge Connor gave the court's decision on
the record. (ECF No. 13-5.)  Present were: counsel for the
State; Petitioner; and public defender Eric R. Shenkus, Esquire,
as counsel for Petitioner.  (<u>Id</u>. at 1-2.)

Judge Connor stated that, while Petitioner "did express an
awareness ... of an obligation to abide by the rules of evidence

6

and Rules of Criminal Procedure," he "did not profess to be familiar with any of their requirements." (Id. at 4.) The court also expressed reservation about the fact that Petitioner's self-titled "quiet title complaint" in his underlying criminal case attached "an affidavit in which he asserted that handing a note to a bank teller [during his commission of the robbery] was a pure accident related to gambling and to manic depression." (Ibid.) That exhibit was "effectively an admission with respect to the crime that he's charged with." (Ibid.) Judge Connor stated that "for all of [Petitioner's] other expansive ventures into the corners of the common law, [he] has little understanding or appreciation for the Fifth Amendment and its importance to him." (Ibid.) (See also ECF No. 13-5 at 4 (referring to Petitioner's "multiplicity of ... essentially nonsensical filings"). These circumstances left Judge Connor "unable to find that [Petitioner's] waiver of counsel is knowing and voluntary." (Id. at 4-5.)

Judge Connor explained other circumstances informing the court's adjudication of the Self-Representation Motion, as follows:

> [Petitioner] self-identifies as a "Moor" ...
> and certainly concedes of himself as a
> sovereign citizen ... [A]ll sovereign
> citizens assert they retain an individual
> common law identity that they claim exempts
> them from the authority of all government
> institutions, including the judiciary ...

7

> [S]overeign citizens reject the current
> federal, state and local governments and
> consider themselves outside their authority
> ... [Petitioner's waiver of counsel] is
> infected by the fact that as a sovereign
> citizen he rejects current federal, state
> and local governments and considers himself
> outside their authority.

(Id. at 2-3.)[4]

Denying the Self-Representation Motion, Judge Connor

further explained:

> So, Mr. Britton may be aware, as he put it,
> of the expectation that he will abide by the
> Rules of Evidence, but that is something
> quite different from under[standing] this
> statement and undertaking to abide by them
> in the crucible of a trial being conducted
> in a forum whose very legitimacy Mr.
> Britton[,] by virtue of his Moorish
> proclamations[,] rejects.
>
> Mr. Britton may know what the robbery
> statute says and he may know what the
> maximum penalty is, but that's a far cry
> from actually embracing that these are real
> laws in a real universe in which laws will

---

[4] Cf., Metaphyzic El-Electromagnetic Supreme-El v. Dir. of Dep't of Corr., No. 3:14CV52, 2015 WL 1138246, at *12 (E.D. Va. Mar. 3, 2015) (noting, where petitioner contended that Virginia courts lacked jurisdiction to prosecute him because of his status as a Moorish-American, that "it is well-recognized that ... the Moorish American Nation ... [is a] notorious organization[] of scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws'") (internal citations omitted); Abdullah v. New Jersey, No. 12-4202, 2012 WL 2916738, at *1 (D.N.J. July 16, 2012) (summarizing the beliefs underpinning the ethnic/religious movement of Moorish-Americans and of sovereign citizens/Redemptionists) (citing Murakush Caliphate of Amexem, Inc. v. New Jersey, 790 F. Supp.2d 241, 245 (D.N.J. 2011)).

> not shrink before any good talk of the UCC
> or Bills of Attainder and Writs of Replevin.
>
> Therefore, I find that Mr. Britton doesn't
> understand the nature and consequences of
> waiving counsel. I conclude that he is
> blinded to the consequences because he
> thinks that a repetition of Moorish buzz
> words will somehow immunize him from the
> predictable bad outcomes that are otherwise
> likely to be[fall] [him].

(ECF No. 13-5 at 5.)  Judge Connor allowed Petitioner an opportunity to speak on matters as to which he wished to be heard.  Petitioner spoke about, <u>inter</u> <u>alia</u>: "a writ of attachment," a "writ capias ad respondendum," his status as "a holder in due course", "House Jury Resolution 192," "negotiable instruments," and <u>Erie v. Tompkins</u>.  (<u>Id</u>. at 5-7; ECF No. 13-6.) Judge Connor determined that Mr. Aguilar would remain as Petitioner's counsel.  (<u>Ibid</u>.)

State court post-trial proceedings ultimately concluded when the New Jersey Supreme Court denied certification on May 5, 2017.  (ECF No. 13-15.)  Following Petitioner's various procedural errors in the early stages of this federal habeas matter (<u>see</u> ECF No. 17 at 2-3), Petitioner filed his Amended Petition on October 16, 2017.  (ECF No. 8.)

## III. **DISCUSSION**

### A.  **Standard Of Review**

28 U.S.C. § 2254 permits a court to entertain only claims alleging that a person is in state custody "in violation of the

Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). Petitioner has the burden of establishing

each of his claims. See Eley v. Erickson, 712 F.3d 837, 846 (3d

Cir. 2013). Under 28 U.S.C. § 2254, as amended by 28 U.S.C. §

2244, federal courts in habeas corpus cases must give

considerable deference to determinations of the state trial and

appellate courts. See Renico v. Lett, 599 U.S. 766, 772 (2010).

Section 2254(d) provides as follows:

> (d) An application for a writ of habeas
> corpus on behalf of a person in custody
> pursuant to the judgment of a State court
> shall not be granted with respect to any
> claim that was adjudicated on the merits in
> State court proceedings unless the
> adjudication of the claim --
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the
> United States; or
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts
> in light of the evidence presented in the
> State court proceeding.

Where a state court adjudicated petitioner's federal claim

on the merits, a federal court "has no authority to issue the

writ of habeas corpus unless the [state c]ourt's decision 'was

contrary to, or involved an unreasonable application of, clearly

established Federal Law, as determined by the Supreme Court of

the United States,' or 'was based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding.'" <u>Parker v. Matthews</u>, 567 U.S. 37,
40 (2012) (quoting 28 U.S.C. § 2254(d)). The United States
Supreme Court has emphasized that the question "is not whether a
federal court believes the state court's determination was
incorrect but whether that determination was unreasonable-a
substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S.
465, 473 (2007) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410
(2000)). Habeas petitioners carry the burden of proof, and
review under § 2254(d) is limited to the record that was before
the state court that adjudicated the claim on the merits. <u>See</u>
<u>Harrington v. Richter</u>, 562 U.S. 86, 98, 100 (2011).

"[C]learly established law for purposes of § 2254(d)(1)
includes only the holdings, as opposed to the dicta, of [the
Supreme Court's] decisions," as of the time of the relevant
state-court decision. <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702
(2014) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).
A decision is "contrary to" a Supreme Court holding within §
2254(d)(1) if the state court "contradicts the governing law set
forth in [the Supreme Court's] cases" or if it "confronts a set
of facts that are materially indistinguishable from a decision
of th[e Supreme] Court and nevertheless arrives at a [different]
result." <u>Williams</u>, 529 U.S. at 405–06. Under the
"'unreasonable application' clause of § 2254(d)(1), a federal
habeas court may grant the writ if the state court identifies

the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. With regard to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See* Cullen v. Pinholster, 563 U.S. 170, 180-81 (2011).

In applying these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See* Bond v. Beard*,* 539 F.3d 256, 289-90 (3d Cir. 2008).

**B.   Governing Law**

In Faretta v. California*,* 422 U.S. 806 (1975), the Supreme Court held that the Sixth Amendment right to counsel includes the right to proceed without counsel. Although "courts [must] indulge every reasonable presumption" against a waiver of counsel, Johnson v. Zerbst*,* 304 U.S. 458, 464 (1938) (internal citations and quotation marks omitted), once a defendant "clearly and unequivocally" declares her or his desire to proceed pro se, the trial court's role is quite limited. Faretta*,* 422 U.S. at 835. *See* *also* Buhl v. Cooksey, 233 F.3d 783, 789 (3d Cir. 2000) (courts must indulge every presumption against a defendant's waiver of counsel) (citations omitted). Specifically, the court must confirm that the accused "knowingly and intelligently" forgoes the substantial benefits of counsel,

and it must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." <u>Faretta</u>, 422 U.S. at 835 (internal citations and quotation marks omitted). "Once it is clear that the defendant's eyes are open, the court must permit the defendant to represent her/himself, and any additional inquiry into the defendant's fitness to do so is as irrelevant as it is improper." <u>Alongi v. Ricci</u>, 367 F. App'x 341, 344 (3d Cir. 2010).

Criminal defendants managing their own defense "relinquish, as a purely factual matter, many of the traditional benefits associated with the right to counsel." <u>Faretta</u>, 422 U.S. at 835. Therefore, the right to proceed pro se may only be exercised if the defendant first knowingly and intelligently waives his or her right to counsel. <u>McKaskle</u>, 465 U.S. at 173. Under these well-established principles, "the constitutional right of self-representation in a criminal case is conditioned upon a voluntary, knowing and intelligent waiver of the right to be represented by counsel." <u>Buhl</u>, 233 F.3d at 789 (3d Cir. 2000) (citing <u>Faretta</u>, 422 U.S. at 835, and <u>Edwards v. Arizona</u>, 451 U.S. 477, 482 (1981)).

Whether a defendant has effectively exercised a knowing and voluntary relinquishment of his Sixth Amendment rights "depends

in each case upon the particular facts and circumstances surrounding that case." Edwards, 451 U.S. at 482. "The information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." Iowa v. Tovar, 541 U.S. 77, 88 (2004). See also Edwards, 451 U.S. at 482 (whether a waiver was knowing, intelligent, and voluntary "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused").

To these ends, courts should advise criminal defendants in unequivocal terms of both the technical problems they may encounter in acting as their own attorney and of the risks they take in doing so. See Alongi, 367 F. App'x at 348; United States v. Stubbs, 281 F.3d 109, 118 (3d Cir. 2002) (citing United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982). See also Government of the Virgin Islands v. James, 934 F.2d 468, 473 (3d Cir. 1991) ("the trial court should, for example, tell the defendant that he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the

defendant's effectiveness in presenting his defense may be diminished by his dual role as attorney and accused") (citing McMahon v. Fulcomer, 821 F.2d 934, 945 (3d Cir. 1987).

New Jersey law is consistent with these federal principles. See, e.g., State v. Crisafi, 608 A.2d 317, 323 (N.J. 1992) ("Defendants possess not only the right to counsel, but the right to dispense with counsel and to proceed pro se ... A defendant can exercise the right to self-representation only by first knowingly and intelligently waiving the right to counsel") (citing Faretta and McKaskle); and State v. Reddish, 859 A.2d 1173, 188-89 (N.J. 2004) (discussing and applying the federal standards enunciated in Faretta).

However, "the right to self-representation is not absolute." Indiana v. Edwards, 554 U.S. 164, 171 (2008). "Even at the trial level ... the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." Id. at 177 (quoting Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 162 (2000)). See also McKaskle v. Wiggins, 465 U.S. 168, 173 (1984) (while the Sixth Amendment gives a criminal defendant the right to represent himself at trial, it does so only to the extent that he is "able and willing to abide by rules of procedure and courtroom protocol").

### C.   **The Self-Representation Claim Fails On The Merits**

At the outset, this Court observes "[t]wo concepts [that] color the issues at hand":

> One of these concepts underlies [the] ethnic/religious identification movement [of] individuals who refer to themselves as "Moors[.] [T]he other concept [is the] movement [by those who] denounce[] United States citizenship [in favor of] self-declaration of other, imaginary "citizenship" and accompanying self-declaration of equally imaginary "diplomatic immunity" ...
>
> [U]nfortunately enough, certain groups of individuals began merging these concepts by building on their alleged ancestry in ancient Moors ... for the purposes of committing criminal offenses and/or initiating frivolous legal actions on their self-granted "diplomatic immunity," which these individuals deduce either from their self-granted "Moorish citizenship" and from their correspondingly-produced homemade "Moorish" documents ... or from a multitude of other, equally non-cognizable under the law, bases, which these individuals keep creating in order to support their allegations of "diplomatic immunity."

See Abdullah v. New Jersey, No. 12-4202, 2012 WL 2916738, at *1 (D.N.J. July 16, 2012) (citing Murakush Caliphate of Amexem, Inc. v. New Jersey, 790 F. Supp.2d 241, 245 (D.N.J. 2011)).

Turning to the particular facts of this case, and for the reasons explained below, this Court finds that the state court's decision on the Self-Representation Motion was not "contrary to or an unreasonable application of clearly established federal

16

law" (28 U.S.C. § 2254(d)(1)), and was not based on an
"unreasonable determination of the facts" in light of the
evidence before the state court.  28 U.S.C. § 2254(d)(2).

Judge Connor's colloquy at the Motion Hearing was
consistent with the Faretta federal standard and with related
state law. See Crisafi, 608 A.2d at 323, and Reddish, 859 A.2d
at 188-89.  The court asked Petitioner a series of questions to
determine whether his Sixth Amendment counsel waiver was
knowing, intelligent, and voluntary.  See Johnson, 304 U.S. at
464 (directing courts to consider a defendant's "background,
experience, and conduct" in their colloquies); Alongi, 367 F.
App'x at 348 ("Inquiry into these factors [is] directed towards
determining whether the defendant's waiver is knowing and
voluntary").

For example, Judge Connor asked Petitioner whether he
understood what the criminal charges were against him and the
range of possible sentences.  (ECF No. 13-4 at 8.)  See Welty,
674 F.2d at 188 (citing Von Moltke v. Gillies, 332 U.S. 708, 724
(1948)); Crisafi, 608 A.2d at 323 (citations omitted).  Judge
Connor also advised Petitioner of the difficulties he would
encounter if he represented himself and of the risks of
proceeding without counsel.  (ECF No. 13-4 at 11-14.)  See
Reddish, 859 A.2d at 1197.  Consistent with Crisafi and Faretta,
Judge Connor asked open-ended questions of Petitioner on these

issues. (ECF No. 13-4 at 4-7 (e.g., "[I]s that still your desire [to represent yourself]?"; "How far did you go in school?"; "What kind of work have you done over your life?"; "Have you ever represented yourself before in a criminal trial?"; "Do you know what you're charged with here?").) See New Jersey Div. of Child Prot. and Permanency v. Q.W., No. A-1406-15T2, 2018 WL 359785, at *8 (N.J. Super. Ct. App. Div. Jan. 11, 2018) ("In Reddish ... our Supreme Court took the 'opportunity to amplify our directive in Crisafi' by requiring criminal courts to 'ask appropriate open-ended questions that will require defendant to describe in his own words his understanding of the challenges that he will face when he represents himself at trial'") (internal citations omitted).

Petitioner was unable to demonstrate a rational understanding, in his own words, of: the nature of his criminal proceeding; what self-representation would require of him; the applicable rules of criminal procedure that he would need to follow; or even his amenability to prosecution under state criminal laws. (See, e.g., ECF No. 13-4 at 9 ("If I may be heard continuously, now in this administrative hearing, in accordance to the administrative procedural right, statutory crime is rebuttable and as it means to certain right, I rebut the presumption that I am the person that's being addressed in any of the legal paperwork and I assert the right to be heard ...

Now I submitted the UCC finances statement only as an exhibit because I understand that this – that finances statement is just a notification ... So if we are to look at the Supreme Court adopted rules that govern the Superior Courts in pleadings, I would assert 5 –– Rule 4:5-4, subsection 2.1, which is a court in satisfaction as affirmative defense to the actual statutory crime").)  On the record before the state court, Petitioner did not appear to even superficially understand the legal process or basic law as it applied to the serious criminal charges against him.  (<u>Ibid</u>.)

The trial court's denial of the Self-Representation Motion was not contrary to, or an unreasonable application of, federal law as established in opinions of the United States Supreme Court.  Petitioner's statements at the Motion Hearing were the polar opposite of an intelligent waiver of his Sixth Amendment rights.  It was objectively reasonable for Judge Connor to conclude that Petitioner had failed to intelligently waive counsel.  On the record before the state court, Petitioner: (1) had no experience representing himself (ECF No. 13-4 at 6); (2) made only vague, rambling, irrelevant, and unintelligible statements in response to the court's questions (<u>e.g.</u>, ECF No. 13-4 at 9-10 ("I would like to bring into the record the precedent case which is <u>Erie v. Tompkins</u> ... The reason why I cite that case is become in the statute, under the savings to

suitors clause, all otherwise entitled remedies are available");
(3) had professed unfamiliarity with the Rules of Criminal
Procedure (id. at 12); and (4) demonstrated an inability and/or
refusal to responsively answer questions directed to him (e.g.,
ECF No. 13-4 at 13 (referring to "the jury being a conscience of
the community" when asked whether he understood the rules for
questioning witnesses at trial).

Judge Connor's denial of the Self-Representation Motion was
also consistent with the presumption against waiver of counsel.
See Johnson, 304 U.S. at 464.

The state court's decision was not based on Petitioner's
lack of technical knowledge of the law.  See Alongi, 367 F.
App'x at 348.  Rather, Judge Connor's ruling was properly based
on the totality of the circumstances regarding Petitioner's
conduct, confusion, and utter lack of rational comprehension
during the proceedings.  All of these demonstrated his inability
to make an intelligent waiver.

Furthermore, since Petitioner demonstrated a remarkable
intent to "wear down [the court] with hundreds of pages of
documents and torrents of oral gibberish spoken in support of
those documents" (ECF No. 13-5 at 5), he jeopardized the
integrity of the criminal proceedings. See Martinez, 528 U.S. at
162 (holding that the right to self-representation must, at
times, yield to "the government's interest in ensuring the

integrity and efficiency of the trial ...").  Accord Metaphyzic

El-Electromagnetic Supreme-El v. Director of Dep't of Corr., No.

3:14CV52, 2015 WL 1138246, at *12 (E.D. Va. Mar. 3, 2015)

(petitioner, a Moorish—American, contended that, inter alia,

"the 'UCC' form he signed 'reserved his right to not be liable

for anything unknown in signing thereof," and he "refused to

comply with the Court's directives or appropriately answer the

Court's questions. [His] obstreperous attempts to pursue the

frivolous defense that the Circuit Court lacked jurisdiction to

try or convict him, rendered him unable to adequately represent

himself or present the best possible defense ... Additionally,

[petitioner's] 'assertion of his right to proceed without

counsel ... suggest[s] more a manipulation of the system than an

unequivocal desire to invoke his right of self-representation.'

In light of [petitioner's] conduct prior to trial, the Circuit

Court appropriately refused to allow him to proceed pro se")

(internal citations omitted).  See also United States v. Frazer-

El, 204 F.3d 553, 559-60 (4th Cir. 2000) (finding no

constitutional violation of self-representation when Moorish-

American defendant insisted upon making "meritless and

irrelevant" arguments that "he was not subject to the

jurisdiction of a ... court ... At bottom, the Faretta right to

self-representation is not absolute, and 'the government's

interest in ensuring the integrity and efficiency of the trial

at times outweighs the defendant's interest in acting as his own lawyer'") (internal citations omitted).

Although it did not expressly address the Self-Representation Motion, the Appellate Division reasonably could have determined that, in light of the record before it, Judge Connor's rejection of that Motion was proper; and therefore, to the extent Petitioner's appeal challenged Judge Connor's ruling on that Motion, his appeal did not warrant a written opinion. (See ECF No. 13-15 ("the issues on appeal relate solely to the sentence imposed[,] [and] [Petitioner's] sentence is not manifestly excessive or unduly punitive").)

In sum, the trial judge engaged Petitioner in a thoroughly open-ended exchange and reached the correct conclusion for the correct reasons. Judge Connor's colloquy concentrated on Petitioner's unintelligible pre-trial conduct that strongly suggested his inability to make a knowing and intelligent waiver. Petitioner's rambling, disjointed, irrelevant, and confusing statements at the Motion Hearing established his limited ability or willingness to comprehend the legal process, the attendant risks of self-representation, and even his amenability to criminal prosecution in state court. His conduct reasonably could have raised doubts about his ability to adequately represent himself. It also raised a risk of

compromising "the integrity and efficiency of the trial."
Edwards, 554 U.S. at 177.

The state court decision was, therefore, not contrary to or
an unreasonable application of clearly established federal law,
and was not based on an unreasonable determination of the facts
in light of the evidence before the state court.  28 U.S.C. §
2254(d)(1), (d)(2).  Petitioner has not demonstrated that the
state court decision, when evaluated objectively and on the
merits, resulted in an outcome that cannot be reasonably
justified.  Matteo, 171 F.3d at 891.

**IV.  MOTION FOR ASSIGNMENT OF PRO BONO COUNSEL**

Petitioner has requested appointment of pro bono counsel
because he cannot afford counsel and he feels incapable of
pursuing his claims in the Amended Petition.  (See ECF No. 24 at
1.)

A court must appoint counsel if an evidentiary hearing is
necessary in a § 2254 proceeding.  See Rule 8(c), Rules
Governing Section 2254 Cases in the United States District
Courts.  The merits-based and purely legal issue before this
Court does not require an evidentiary hearing.  Rather, whether
or not the Self-Representation Claim warrants habeas relief can
be determined on the record before this Court.  Therefore, the
Court considers Plaintiff's request for appointment of pro bono
counsel (ECF No. 24) under 28 U.S.C. § 1915(e)(1).

While there is no right to counsel in a civil case, <u>see</u> <u>Tabron v. Grace</u>, 6 F.3d 147, 153-54 (3d Cir. 1993); <u>Parham v.</u> <u>Johnson</u>, 126 F.3d 454, 456-57 (3d Cir. 1997), pursuant to § 1915(e)(1) "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). In deciding whether counsel should be appointed, a court first considers whether a claim or defense has "arguable merit in fact and law." <u>Tabron</u>, 6 F.3d at 155. If it does, a court then considers additional factors, which include: (1) the applicant's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the applicant to pursue such investigation; (4) whether credibility determinations will play a significant role in the resolution of the applicant's claims; (5) whether the case will require testimony from expert witnesses; and (6) whether the applicant can afford counsel on his or her own behalf. <u>Tabron</u>, 6 F.3d at 155-157.

Under these governing principles, a court -- in determining whether to appoint pro bono counsel under § 1915(e)(1) -- must first make a threshold determination of whether a petitioner's case has "some merit in fact and law." <u>Tabron</u>, 6 F.3d at 155.

In this case, there is nothing in the record to suggest that Petitioner has a meritorious claim in Ground Three's

exhausted claim.  As explained at length <u>supra</u>, the Self-Representation Claim fails on the merits.  Therefore, Petitioner has not satisfied <u>Tabron</u>'s threshold showing, and the Court need not proceed to weigh <u>Tabron</u>'s additional factors.  <u>Tabron</u>, 6 F.3d at 155-56.  The Court will deny Petitioner's motion for appointment of counsel.

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

The Anti-Terrorism and Effective Death Penalty Act provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court will deny a certificate of appealability because jurists of reason would not debate the Court's ruling.

## VI.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will deny the Amended Petition with prejudice, will deny a certificate of appealability, and will deny the motion for appointment of counsel.  An appropriate order follows.


 September 30, 2019                  s/ Noel L. Hillman
Date                                   NOEL L. HILLMAN
                                       U.S. District Judge

At Camden, New Jersey